# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| CARMEN A. MARTINEZ, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-16-3267 |
| | § | |
| RANCH MASONRY, INC., RANCH | § | |
| MASONRY AND CAST STONE, | § | |
| LLC, JOSEFINA C. GARCILAZO, | § | |
| and ARTURO GARCILAZO, | § | |
| Defendants. | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff Carmen A. Martinez filed this Fair Labor Standards Act ("FLSA") case against Defendants Ranch Masonry, Inc. ("Ranch Masonry"), Ranch Masonry and Cast Stone LLC ("Ranch LLC"), Josefina C. Garcilazo, and Arturo Garcilazo. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. The Court has personal jurisdiction over all parties, and venue is proper in the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. § 1391(b)(1) and (2).

This case was tried to the Court on February 15 and 16, 2018. The parties presented evidence through live witnesses and documentary exhibits. Having considered the evidence introduced by the parties, all matters of record in this case,

the arguments of counsel and applicable legal authorities, the Court makes the following findings of fact and conclusions of law.[1]

## I. GENERAL BACKGROUND

Ranch Masonry was formed by Arturo Garcilazo, Sr., in 1998. Ranch LLC was formed in 2015 by Arturo Garcilazo, Sr.'s two children, Defendants Arturo Garcilazo and Josefina Garcilazo. Ranch LLC was formed to transition the family masonry business from Arturo Garcilazo, Sr. to his children. In 2015, Ranch Masonry's employees were transferred to the payroll of Ranch LLC. Ranch Masonry remained in business through 2016, staffing its projects, in part, with the same workers who transferred to Ranch LLC's payroll in 2015.

Plaintiff Martinez was employed by Ranch Masonry from November 2012 through July 2016. Martinez was employed by Ranch LLC from its inception in 2015 through July 2016. Between November 2013 and the formation of Ranch LLC in 2015, Martinez was paid an hourly rate by Ranch Masonry for the first forty hours that he worked each workweek. After the formation of Ranch LLC in 2015, Martinez was

---

[1] The Court explains the evidence and uses various forms of the word "find" to indicate a finding of fact, and sets forth legal principles and uses forms of the words "hold" and "conclude" to indicate a conclusion of law. To the extent a finding of fact is more properly a conclusion of law, and to the extent a conclusion of law is more properly a finding of fact, it should be so construed.

When the Court states that it does not find certain facts, the Court finds or concludes that the party with the burden to prove that fact has failed to satisfy its burden.

paid an hourly rate of pay by that new entity, Ranch LLC, for the first forty hours that he worked each workweek. After forty hours of paid work in any workweek, Ranch Masonry paid Martinez a "piece rate" for any other work he performed during that workweek. During his employment with Ranch Masonry and Ranch LLC, Martinez performed various job duties, such as laborer, scaffolding, and stucco work.

Plaintiff's claims and Defendants' defenses were tried to the Court for two days in February 2018. None of the witnesses at trial was disinterested. Defendants Josefina Garcilazo and Arturo Garcilazo testified, as did Plaintiff Carmen Martinez. Mario and Jose Palma, who testified on Plaintiff's behalf, are pursuing their own FLSA lawsuit against Defendants. *See Palma, et al., v. Ranch Masonry, Inc., et al.*, Civil Action No. H-17-cv-2288. Defense witness David Chavez is a supervisor for Ranch LLC, and defense witness Matthew Chacon is Defendant Arturo Garcilazo's son-in-law.

## II.    **FAIR LABOR STANDARDS ACT**

The FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). "An employee bringing an action for unpaid overtime compensation must first

demonstrate by a preponderance of the evidence: (1) that there existed an employer-employee relationship during the unpaid overtime periods claimed; (2) that the employee engaged in activities within the coverage of the FLSA; (3) that the employer violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due." *Johnson v. Heckmann Water Resources (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014).

It is undisputed, and the Court finds, that during the years 2013 through 2016, Ranch Masonry was an enterprise engaged in commerce within the meaning of the FLSA. It is similarly undisputed, and the Court finds, that in 2015 and 2016, Ranch LLC was an enterprise engaged in commerce within the meaning of the FLSA.

The parties dispute whether there existed an employer-employee relationship during the unpaid overtime periods claimed. Defendants assert that during any time Plaintiff worked in excess of forty hours per workweek, he worked as an independent contractor and not as an employee. Plaintiff asserts that Ranch Masonry and Ranch LLC were joint employers, and that Plaintiff was an employee during the overtime hours.

The parties dispute whether Defendants violated the FLSA's overtime wage requirements. As noted above, Defendants assert that Plaintiff was working as an

employee of Ranch LLC for the first forty hours, and then was working as an independent contractor for Ranch Masonry during the overtime hours.

The parties dispute the number of overtime hours Plaintiff worked, and the amount of overtime compensation due, if any. There are also disputes regarding whether any violation was willful and thus the statute of limitations is extended to three years, and whether Defendants acted in good faith so that liquidated damages should be reduced or not awarded.

## III. "**EMPLOYER**"

The FLSA defines "employer" expansively to include any person acting directly or indirectly in the interest of an employer in relation to an employee. *See* 29 U.S.C. § 203(d). The parties dispute whether Martinez, when working in excess of forty hours per workweek, was an employee or an independent contractor. Additionally, Plaintiff argues that Ranch Masonry and Ranch LLC were joint employers of Plaintiff.

### A. **Employee or Independent Contractor**

To determine if a worker qualifies as an employee for purposes of an FLSA claim, the focus is on "whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself." *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008); *see also Gray v. Powers*, 673 F.3d 352, 354-55 (5th Cir. 2012) (citing *Williams v. Henagan*,

595 F.3d 610, 620 (5th Cir. 2010); *Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir. 1990)).  There are five factors relevant to this inquiry:  "(1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship." *Hopkins*, 545 F.3d at 343.  No single factor is determinative, and these factors are a non-exhaustive list "used to gauge the economic dependence of the alleged employee." *Id*.

**_Defendants' Pay Structure_.**— Defendants structured the work performed for them by separating work hours between Ranch LLC and Ranch Masonry.  Defendants claim that for each workweek, the first forty hours an individual worked were as an "employee" of Ranch LLC, and any hours in excess of forty were worked for Ranch Masonry as an independent contractor.  Defendants presented evidence that Ranch LLC's employees were allowed to work only forty hours per week.  Defendants' witnesses testified that once the forty-hour limit was reached in a given week, the employee was no longer permitted to work for Ranch LLC during that week.  Defendants presented evidence that, if a Ranch LLC employee wanted to perform additional work, he could request an assignment from Ranch Masonry.  Ranch LLC

paid its employees for the forty-hour workweek, and Ranch Masonry would issue a separate check to any worker who requested and received additional work during that workweek. Plaintiff signed neither an employment contract with Ranch LLC nor an independent contractor agreement with Ranch Masonry.

The Court finds that there was no clear break between the work performed for Ranch LLC and any subsequent work for Ranch Masonry. The Court does not credit Defendants' evidence that the supervisors knew when an employee reached the forty-hour limit and would then refuse to allow that employee to work additional hours for Ranch LLC. The Court finds that Ranch LLC employees often continued to perform the same work at the same jobsite, regardless of whether they asked to continue working beyond the forty-hour mark.

**Hopkins *Factors*.—** Regarding the degree of control exercised over Plaintiff in connection with his work, control is significant only to the extent that a worker has such control over a meaningful part of his work that he stands as a separate economic entity. *See Hopkins*, 545 F.3d at 343. The Court finds that Arturo Garcilazo gave Plaintiff the work assignments for both Ranch LLC and Ranch Masonry, and that sometimes the assignments would be at the same location. Defendants presented evidence that Plaintiff could control his work because he would not be given any work assignment beyond the forty-hour workweek unless he specifically requested

additional work. However, as noted above, the Court does not find credible Defendants' evidence regarding the forty-hour limit for Ranch LLC work or the requirement that additional work be requested and be performed for Ranch Masonry. The Court finds that Plaintiff's work was supervised both when working the first forty hours and when he worked beyond the first forty hours.

Regarding the relative investment factor, the Court compares Plaintiff's individual investment to that of the alleged employer. *See id.* at 344. It is undisputed that Plaintiff (and other laborers) supplied basic work tools, with a total cost between $100 and $250. The Court finds that this is a minimal investment relative to the investment of Defendants in Ranch LLC and Ranch Masonry of substantial materials, equipment and supervisory and administrative staff.

Regarding the degree to which Plaintiff's opportunity for profit or loss is determined by Ranch Masonry, the Court finds that Plaintiff did not share in Ranch Masonry's profits, and that Plaintiff did not perform work for any company other than Ranch Masonry and Ranch LLC. Defendants presented evidence that Plaintiff's profit on the work performed for Ranch Masonry, for which he was paid a piece rate, could increase if he worked more quickly. The Court finds, based on Arturo Garcilazo's testimony, that the inspection of workers' "piece work" was superficial and insufficient to evaluate meaningfully the pace of the work. At best, it appears Arturo

Garcilazo would look at the work and "guess-timate" how much work had been performed by each worker.

Defendants also presented evidence that Plaintiff could suffer a loss if his work was not of acceptable quality, in which case he would have to redo the work at his own expense. Defendants' witnesses described only one instance in which work may have had to be redone, and the description was in the most vague terms. This instance did not involve Plaintiff.

Regarding the skill and initiative required for the worker to perform his job, the Court looks for "some unique skill set" such as pipe welding, rather than general welding, and some ability to exercise significant initiative within the business. *See id.* at 345. In this case, the Court finds that the skill required for Plaintiff to perform his work was limited, and the necessary initiative was minimal. Plaintiff began working for Ranch Masonry as an unskilled laborer. While working as a laborer, he learned to perform other work, including scaffolding and stucco work. The Court finds, however, that Plaintiff performed the same scaffolding and stucco tasks while working as an employee for Ranch LLC. Although construction workers in more skilled positions, such as the pipe welder mentioned in *Hopkins*, often work as independent contractors, the Court finds that the skill required for Plaintiff to perform his job for Defendants does not suggest that he worked as an independent contractor.

Regarding the final factor – the permanency of the relationship – Plaintiff worked for Defendants, either Ranch Masonry or Ranch LLC, from November 2012 into 2016. Plaintiff's many years working for Ranch Masonry or Ranch LLC demonstrates the permanency of an employment relationship.

The Court finds, based on its analysis of the relevant factors set forth above, that Plaintiff was an employee of Ranch LLC or Ranch Masonry throughout his working hours. He was not an independent contractor for Ranch Masonry during those hours he worked in excess of forty in a workweek.

## B.  <u>Joint Employment Relationship</u>

A single individual may be an employee of two or more employers at the same time under the FLSA. *See* 29 C.F.R. § 791.2(a). Where an employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employer relationship generally will be found to exist where:

(1)    there is an arrangement between the employers to share the employee's services;

(2)    where one employer is acting directly or indirectly in the interest of the other employer in relation to the employee; or

(3)    where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason

of the fact that one employer controls, is controlled by, or is under
common control with the other employer.

29 U.S.C. § 791.2(b). Arturo Garcilazo testified, and the Court finds, that Ranch LLC

and Ranch Masonry had an arrangement to share workers, including Plaintiff, who

were employees of Ranch LLC. This testimony establishes, and the Court finds, that

Ranch LLC and Ranch Masonry were Plaintiff's joint employers.

Plaintiff asserts also that individual Defendants Josefina Garcilazo and Arturo

Garcilazo are liable under the FLSA as his employers. Josefina Garcilazo is the

Secretary for Ranch Masonry. She owns 50% of Ranch LLC. Arturo Garcilazo is the

corporate Vice President of Ranch Masonry.

The Court utilizes the "economic reality test" when determining whether a

defendant is a plaintiff's employer under the FLSA. *See Orozco v. Plackis*, 757 F.3d

445, 448 (5th Cir. 2014) (citing *Gray v. Powers*, 673 F.3d 352, 354 (5th Cir. 2012)).

Under the economic reality test, the Court evaluates "whether the alleged employer:

(1) possessed the power to hire and fire the employees, (2) supervised and controlled

employee work schedules or conditions of employment, (3) determined the rate and

method of payment, and (4) maintained employment records." *Id.* (citing *Gray*, 673

F.3d at 355). "The dominant theme in the case law is that those who have operating

control over employees within companies may be individually liable for FLSA

violations committed by the companies." *Id.* (quoting *Martin v. Spring Break '83*

*Prods., LLC*, 688 F.3d 247, 251 (5th Cir. 2012)). "Moreover, the remedial purposes of the FLSA require the courts to define 'employer' more broadly than the term would be interpreted in traditional common law applications." *Id*. (internal quotations and citation omitted). In joint employer contexts, the plaintiff must satisfy the economic reality test as to each alleged employer. *Id.* (citing *Gray*, 673 F.3d at 355).

The evidence in this case is uncontroverted that Josefina Garcilazo maintained the employment records for Plaintiff and others who worked for Ranch LLC and Ranch Masonry. She was an officer of Ranch Masonry and owns 50% of Ranch LLC. It is uncontroverted that Arturo Garcilazo had the power to hire and fire employees for both entities, to control work schedules and other conditions of employment, and to determine the rate and method of payment for individuals working for both Ranch LLC and Ranch Masonry. Arturo Garcilazo testified, and the Court finds, that he had full operational control of Ranch LLC and some operational control of Ranch Masonry. Josefina Garcilazo testified, and the Court finds, that she together with her brother had total operational control and total supervisory control of Ranch LLC. They also had substantial operational and supervisory control of Ranch Masonry, although their father retained ownership of the corporation and came into the office approximately once a week.

Based on the uncontroverted evidence presented at trial, and the remedial purposes of the FLSA, the Court finds that Josefina Garcilazo and Arturo Garcilazo were Plaintiff's employers for purposes of the FLSA. The Court finds that they were joint employers with Ranch LLC and Ranch Masonry.

## IV.   OVERTIME HOURS

### A.   Calculation of Overtime Wages

*Overtime Rate.*—   Where, as here, an employee is paid at different non-overtime rates of pay, the employee's regular rate of pay for FLSA purposes is calculated by dividing his total remuneration for the workweek by the total number of hours worked. *See* 29 C.F.R. § 778.109. An employee paid by piece-rate is entitled under the FLSA to be paid overtime wages equal to one-half of their regular rate multiplied by the number of overtime hours worked. *See* 29 C.F.R. § 778.111.

*Number of Overtime Hours Worked.*— The FLSA imposes a duty on employers to keep proper records of the hours worked by employees. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), superseded by statute on other grounds as explained in *Integrity Staffing Solutions, Inc. v. Busk*, __ U.S. __, 135 S. Ct. 513, 516-17 (2014). In this case, it is undisputed that Defendants did not keep

records of the hours Plaintiff worked after the initial forty hours each workweek.[2]

Where the employer fails to maintain proper records, an employee satisfies his burden to establish the number of overtime hours he worked "if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *See id.* at 688; *Clark v. Centene Co. of Texas, L.P.*, 104 F. Supp. 3d 813, 827 (W.D. Tex. 2015). "The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* "Evidence of hours worked need not be perfectly accurate as long as it provides a sufficient basis to calculate the number of hours worked by each employee." *Colindres v. QuietFlex Mfg.*, 427 F. Supp. 2d 737, 752-53 (S.D.

---

[2]    Josefina Garcilazo testified at trial that she maintained records for hours an employee worked for Ranch LLC, up to a maximum of forty hours. There is no dispute, however, that neither Ranch LLC nor Ranch Masonry produced or maintained records of hours worked beyond the initial forty hours per workweek. Ms. Garcilazo testified that the paper copies of the records that were maintained were stored in boxes in a storage building that flooded in April 2016, after which the wet documents were removed and presumably destroyed by a shredding company. She testified further that the Ranch LLC computers were damaged in 2017 during Hurricane Harvey, and that there were no back-up programs. The records damaged in the 2016 flood and the computer records lost in the 2017 flooding during Hurricane Harvey would not have reflected the number of overtime hours Plaintiff worked.

Tex. 2006) (Rosenthal, J.) (citing *Marshall v. Mammas Fried Chicken, Inc.*, 590 F.2d 598, 598 (5th Cir. 1979)).

In this case, Josefina Garcilazo testified that employees generally worked eight hours per day. David Chavez and Matthew Chacon testified that employees generally worked from 7:00 a.m. until 3:30 p.m., with thirty minutes for lunch, Monday through Friday. They each testified that the employees would work on Saturdays only if there had been rain or some other occurrence during the workweek. Neither witness supervised or had personal knowledge of the overtime hours Plaintiff worked.

Mario Palma and Jose Palma testified that they regularly worked with Plaintiff. Each testified that Plaintiff often worked fifty-six hours per week. Plaintiff testified that he worked fifty-eight hours per week. He testified that he made a contemporaneous handwritten record of the hours he worked. As an initial matter, the Court does not find Plaintiff's testimony regarding the handwritten records to be credible. Moreover, the records do not reflect any date on which Plaintiff worked a ten-hour day.

The Court credits the testimony of Mario and Jose Palma on this issue. The Court finds that the evidence presented at trial creates a "just and reasonable inference" that Plaintiff worked fifty-six hours per week certain weeks. Evidence

introduced at trial[3] shows that within the two-year statute of limitations Plaintiff received a second check, indicating that he worked more than forty hours that workweek, on nineteen occasions. For each of those workweeks, the Court finds and concludes that Plaintiff is entitled to recover overtime wages – calculated in the manner described above – for sixteen overtime hours.

Plaintiff argues that he should receive overtime wages for each of the workweeks in which he worked a full forty hours, regardless of whether Plaintiff received a second check. The Court does not find this argument persuasive. Moreover, there is no evidence Plaintiff complained to, or even questioned, his employers that he did not receive a second check when he did not receive one. Evidence that Plaintiff worked and was paid for a full forty hours in a workweek does not, in and of itself, raise a "just and reasonable inference" that Plaintiff worked fifty-six hours in those weeks.

## B.    Willful Violation

Ordinary violations of the FLSA are subject to a two-year statute of limitations. *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988). If a violation is "willful," the statute of limitations is extended to three years. *See id.* Willfulness is

---

[3]    *See* Plaintiff's payroll records, Plaintiff's Exh. 1, and Damages Summary, Plaintiff's Exh. 2.

a question of fact, and Plaintiff has the burden of proof. *See Steele v. Leasing Enterprises, Ltd.*, 826 F.3d 237, 248 (5th Cir. 2016).

To prove willfulness, a plaintiff must demonstrate that the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Id.* (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133-34 (1988)). "A negligent violation is not a willful violation, and an unreasonable violation does not necessarily constitute a willful violation." *Id.* (internal quotations and citation omitted). "Mere knowledge of the FLSA and its potential applicability does not suffice, nor does conduct that is merely negligent or unreasonable." *Zannikos v. Oil Inspections (U.S.A.), Inc.*, 605 F. App'x 349, 360 (5th Cir. 2015) (citing *McLaughlin*, 486 U.S. at 132-33; *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 127-28 (1985); *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1416 (5th Cir. 1990)). Indeed, in *Steele*, a finding that the FLSA violation was not willful was upheld even though the employer continued its challenged practice for a period of three years after the district court entered an interlocutory order that the practice violated the FLSA. *See Steele*, 826 F.3d at 248.

In this case, the Court cannot find that Defendants' FLSA violation was willful. It is clear that Defendants genuinely believed in the legality of their system of having Ranch LLC employees work the first forty hours in a workweek, and that additional

work was performed as an independent contractor. There is no evidence that Defendants understood their system violated the FLSA. Although Defendants' belief may have been unreasonable, as discussed below, the Court cannot find that their violation of the FLSA was willful.

### C. **Liquidated Damages**

An employer who violates the FLSA is liable for liquidated damages equal to the unpaid overtime compensation unless, after concluding that the employer acted in "good faith" and had "reasonable grounds" to believe that its actions complied with the FLSA, the District Court declines to award liquidated damages or reduces the amount of liquidated damages. *See* 29 U.S.C. § 260. An employer found liable under the FLSA has the substantial burden to prove "to the satisfaction of the trial court that its acts giving rise to the suit are both in good faith and reasonable." *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1415 (5th Cir. 1990); *Steele*, 826 F.3d at 246. Good faith requires a "duty to investigate potential liability under the FLSA," and ignorance cannot be the basis of a reasonable belief. *Steele*, 826 F.3d at 246 (quoting *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 469 (5th Cir. 1979)).

As described above, Defendants implemented a pay structure in which hours up to forty per workweek were performed by employees of Ranch LLC and hours in excess of forty were performed by independent contractors working for Ranch

Masonry. The Court finds that Defendants held an honest belief that this was a valid structure and and used it to avoid the requirement to pay overtime compensation. The Court further finds, however, that Defendants' honest belief was not reasonable. Defendants admit that they did not consult with an attorney prior to instituting the "shared worker" structure. The companies have been the subject of Department of Labor investigations and there is no evidence that Defendants sought a ruling from the relevant federal agency regarding whether their structure was, in fact, permissible. As a result, the Court does not find that Defendants acted in good faith such that liquidated damages should be reduced or eliminated.

### D. Conclusion Regarding Overtime Compensation

A two-year statute of limitations applies to this case. Plaintiff is entitled to recover overtime compensation for sixteen overtime hours in each of the nineteen workweeks in which he received a second check. The overtime wages are calculated by dividing his total remuneration for each of the nineteen workweeks by fifty-six (the total number of hours worked in that week) to obtain the regular rate. Plaintiff is entitled to be paid overtime wages for each of the nineteen workweeks at an overtime rate equal to one-half of his regular rate, multiplied by sixteen (the number of overtime hours worked). Plaintiff is entitled to liquidated damages in an amount equal to his overtime wages.

Neither party has calculated Plaintiff's overtime wages as set forth herein. Therefore, the Court will require the parties to perform the calculation consistent with these Findings of Fact and Conclusions of Law, including the $1,910.00 offset as discussed in the following section. Plaintiff, through his counsel, shall submit a proposed Final Judgment by April 20, 2018.

## V.   **LOAN FOR DENTAL WORK**

Ranch LLC filed a counterclaim seeking to recover $1,910.00, the outstanding balance of a loan to Plaintiff. *See* Answer and Counterclaim [Doc. # 8], ¶¶ 20-23. Defendants allege, and presented evidence, that they "loaned money to the Plaintiff for repair of the Plaintiff's teeth with the agreement and consent that the loan would be paid off by deductions from the Plaintiff's paycheck." *See id.*, ¶ 20.

It is undisputed, and the Court finds, that Plaintiff occasionally requested and obtained loans from Ranch LLC, some of which were for dental work. The Court finds that, prior to June 2016, Plaintiff repaid each of the loans, either directly or through deductions to his paycheck.

It is undisputed, and the Court finds, that Defendants paid at least $2,000.00 in 2016 for Plaintiff's dental work. Defendants presented evidence that the $2,000.00 payment was a loan from Ranch LLC to Plaintiff. Defendants presented evidence specifically that an initial $825.00 was charged by the dentist to one of their credit

cards, and there was later a separate loan for the approximately $2,000.00 balance due for the dentist's services. Shortly before Plaintiff left the employ of Ranch LLC in July 2016, Defendants began deducting $200.00 from each of Plaintiff's paychecks in connection with the payment for Plaintiff's dental work. Plaintiff testified that he was earning only $480.00 per week at the time and that he could not "live on" the amount he received each week after the $200.00 was deducted for the dental work.

Plaintiff disputes that there was a loan for which he owes any outstanding balance. Plaintiff testified that the $2,000.00 payment was, instead, Ranch LLC's payment of dental services required for an on-the-job injury Plaintiff suffered in 2015. Defendants' witnesses testified that Plaintiff did not report an on-the-job injury or otherwise advise them that he did not understand that the $2,000.00 payment was a loan. Plaintiff admitted that he did not file a Workers' Compensation claim in 2015.[4] Plaintiff's testimony was inconsistent regarding whether he obtained a loan, which he repaid, for dental work in 2015. At one point he testified that the 2015 payment was a loan; he later testified that he did not obtain any loans in connection with the on-the-job injury.

---

[4]      It appears that Plaintiff filed a Workers Compensation claim after he left Ranch LLC's employ in July 2016. There is no evidence that Plaintiff received compensation as a result of the 2016 claim.

Plaintiff's witness Jose Palma testified that he witnessed Plaintiff slip on scaffolding and injure his mouth. He testified that he observed that Plaintiff's mouth was bleeding after the fall. He offered no testimony regarding whether Plaintiff obtained a loan from Defendants to pay for his dental work in 2016.

The evidence is inconsistent and unclear regarding whether the reason Plaintiff needed dental treatment in 2016 was because he suffered an on-the-job injury in 2015. The Court finds, however, that the evidence demonstrates that at the time the dental bill was paid in 2016, it was understood by the Garcilazos and by Plaintiff that the payment was a loan that Plaintiff would be required to repay. Whether Ranch LLC *should have* paid for the dental work because it was the result of an on-the-job injury in 2015, whether Plaintiff should have filed a Workers' Compensation claim in 2015, and whether there may have been a violation of any Workers' Compensation requirements are not issues asserted in this lawsuit. The Court finds and concludes that Plaintiff obtained a loan from Ranch LLC and owes the remaining balance of $1,910.00.

## VI. <u>ATTORNEYS' FEES</u>

The FLSA allows a prevailing plaintiff to recover his reasonable and necessary attorneys' fees. *See* 29 U.S.C. § 216(b). Indeed, "'[r]easonable attorney's fees are mandatory' when a court finds that an employer has violated § 206." *Steele v. Leasing*

*Enterprises, Ltd.*, 826 F.3d 237, 249 (5th Cir. 2016) (quoting *Weisel v. Singapore Joint Venture, Inc.*, 602 F.2d 1185, 1191 n.18 (5th Cir. 1979)).  The Court has discretion to determine what is "reasonable" in a particular case.  *Id.*  Fees incurred in pursuing issues on which the Plaintiff did not prevail may be found not "reasonable and necessary" and, therefore, not recoverable.  *See Zamora v. City of Houston*, 2014 WL 11310160, *15 (S.D. Tex. Jan. 30, 2014) (non-FLSA case), *rev'd on other grounds*, 798 F.3d 326 (5th Cir. 2015).

Plaintiff seeks to recover $70,185.00 in attorneys' fees, and taxable costs in the amount of $4,355.73.  Defendants object, arguing that the Court should award Plaintiff no more than $15,000.00 in attorneys' fees and $2,417.74 in costs.

As noted above, the Court will require the parties to calculate the amount of overtime compensation to which Plaintiff is entitled, subject to these Findings of Fact and Conclusions of Law.  The Court also encourages counsel to negotiate the appropriate amount of attorneys' fees and costs that should be awarded in this case and included in the proposed Final Judgment.  If counsel's efforts are not successful, the Court will issue a ruling on attorneys' fees at a later date.

## VII.  CONCLUSION AND ORDER

Individuals Josefina Garcilazo and Arturo Garcilazo qualify as Plaintiff's employers for purposes of the FLSA.  Plaintiff was an employee of joint employers Ranch LLC, Ranch Masonry, Josefina Garcilazo, and Arturo Garcilazo.

During the two years prior to filing this lawsuit, for each of the nineteen workweeks in which Plaintiff received two paychecks, he is entitled to recover overtime compensation for sixteen hours.  Plaintiff is entitled to recover liquidated damages in an amount equal to his overtime wages.  Ranch LLC is entitled to offset $1,910.00 as repayment for the 2016 loan.  Plaintiff is entitled to recover his reasonable and necessary attorneys' fees.  Based on the foregoing, it is hereby

**ORDERED** that by **April 20, 2018**, counsel shall submit a proposed Final Judgment consistent with these Findings of Fact and Conclusions of Law.  Counsel are encouraged to reach agreement on the amount of attorneys' fees to be included in the Final Judgment.

SIGNED at Houston, Texas, this **2nd** day of **April, 2018**.


NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE